KENNETH ROBINSON & another *vs.* SUMNER L. POORVU.

Suffolk.  October 4, 1934. — January 2, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Broker,* Commission.

A real estate broker was not entitled to a commission which an owner of real estate had agreed to pay to him "upon receipt" by the owner "of signed leases from the Woolworth Company" where it appeared that a representative of that company had asked for a "subrogation agreement" by a bank which was a mortgagee of the premises; that a form of lease, signed by the owner, also had been signed by a "Woolworth Company," but that the owner had required that it be guaranteed by another Woolworth company; that the guaranty had been executed by the second Woolworth company; but that, even if a "subrogation agreement" had been executed by the bank and delivered to the proposed lessee, the lease with that agreement and the guaranty attached had not been delivered to the owner, the proposed lessee had not been given possession of the premises, and the owner had requested of the proposed lessee a cancellation of all the documents.

CONTRACT.  Writ in the Municipal Court of the City of Boston dated March 31, 1933.

Upon removal to the Superior Court, the action was

tried before *O'Connell,* J. Material evidence is described in the opinion. There was a verdict, recorded subject to leave reserved, for the plaintiffs in the sum of $463.90. The judge afterwards ordered entered a verdict for the defendant. The plaintiffs alleged exceptions.

*A. Moskow,* (*H. G. Slater* with him,) for the plaintiffs.

*H. Horvitz,* (*S. Berkett* with him,) for the defendant.

PIERCE, J. This is an action of contract by real estate brokers to recover a commission for negotiating a lease of certain property owned by the defendant. The defendant's answer was a general denial. The case was tried to a jury. At the close of the evidence the defendant filed a motion for a directed verdict, which was denied and the case was submitted to the jury. The judge reserved leave with the assent of the jury to enter a verdict for the defendant. The jury returned a verdict for the plaintiffs, and subsequently the judge allowed the defendant's motion that a verdict be entered in his favor in accordance with leave reserved. To the allowance of this motion and to the order for the entry of a verdict for the defendant the plaintiffs duly excepted.

All the material facts and evidence are reported in the bill of exceptions and, in substance, they disclose the following facts: In January, 1933, the plaintiffs were real estate brokers. The defendant was a lawyer engaged in the real estate business, and the owner of property located on High Street in Dedham. This property was at the time occupied by the McLellan Stores Company, then in the hands of a trustee in bankruptcy under a voluntary petition filed by it. The plaintiffs learned of this fact and proposed to the defendant that they procure the F. W. Woolworth Company as a lessee for his property. The defendant said he wanted to wait for a few days and see what happened about the bankruptcy. The defendant, during a conversation with Edward H. Lotz, the assistant district office manager of the Woolworth company, and with H. Milton Cummings, one of the plaintiffs, told them he would negotiate with them if he received a cancellation of the old lease. "It is agreed by the parties that the old lease con-

tained no clause giving the landlord the option of cancelling it in the event of bankruptcy by the tenant."

On January 23, 1933, the defendant authorized the plaintiffs to negotiate a lease for him with the F. W. Woolworth Company, and offered to lease his store to this company on terms set out in Exhibits 1 and 2, which are printed in the bill of exceptions. Exhibit 1 fixed the amount of compensation to be paid and received if "Robinson and Cummings consummate a lease of the premises" between F. W. Woolworth Company and the defendant for a term of twenty years at certain stated rentals. Exhibit 2 authorized the plaintiffs to offer the premises on High Street to the F. W. Woolworth Company on a twenty-year lease at stated rentals. The letter of authorization provided that the lease was "to start within thirty days after the date . . . [the defendant was] able to obtain legal possession of the said store now occupied by McLellan Stores Corporation"; that "This offer is subject also to . . . [his] obtaining the said store" and to his "legally cancelling or disposing of the lease now existing between McLellan Stores Corporation and" himself; and that "This offer [is] to be accepted or rejected within ten days from date hereof." Later the plaintiffs informed the defendant that they were unable to lease the store on his proposed terms.

On February 4, 1933, as the result of further negotiations with the Woolworth company, the defendant entered into a new arrangement with the plaintiffs which is printed in the bill of exceptions as Exhibits 3 and 4. Exhibit 3 is a letter dated February 4, 1933, from the defendant to Robinson, and authorizes the plaintiffs to offer the store at an annual rental of $3,600 for a term of ten years to the F. W. Woolworth Company. Exhibit 4 is a letter dated February 4, 1933, from Robinson to the defendant. Omitting the caption it reads: "I have received from you this day an authorization to rent store at 561 High Street, Dedham, Massachusetts to F. W. Woolworth Company. I hereby agree in behalf of myself and H. Milton Cummings to accept in full payment for commission if and when a lease is signed of the said premises with the Woolworth Company

seventy-one per cent of the full brokers commission as stated in the commission schedule of the Boston Real Estate Exchange." Under figures "2/4/33" the defendant on the same exhibit wrote or subscribed the words, "I hereby agree to pay the above commission upon receipt by me of signed leases from the Woolworth Co." There were at the time in question at least two Woolworth companies, one a Pennsylvania and the other a New York company.

On February 9, 1933, the plaintiff Cummings and the defendant had a conference at the office of the Woolworth company with the assistant district office manager about the requirements of the company as to alterations and the details of the proposed lease. Lotz inquired about a mortgage on the property held by the Charlestown Five Cents Savings Bank, and desired to know whether the bank would sign "a subrogation agreement and assent to the lease." The defendant said, in substance, that he was not sure whether or not the bank would assent. Thereupon Lotz stated that the bank had done it previously on other leases, and he took out of the file a lease. It does not appear clearly in the evidence whether the lease exhibited by Lotz was shown to either Cummings or the defendant. Thereupon the defendant said that "if they had done it for other people, they would do it for him." The evidence does not show any agreement by the defendant to obtain from the bank a "subrogation agreement" and assent to the proposed lease; and it appears that during the conversation Lotz said he "would not insist upon the subrogation contract" but "We would like to have it." At this meeting all the terms of the lease and the proposed alterations were agreed upon. The defendant testified that he requested Lotz to give him a copy of the "subrogation" and assent agreement the bank had signed respecting some other location.

The duplicate leases introduced in evidence as Exhibit 9, dated February 10, 1933, were drawn in accordance with the custom of big chain organizations and were first signed by the landlord, the defendant, and then returned to the F. W. Woolworth Company for its signature, and were

signed by it. At some time between the signing of the
leases by the parties and February 23, 1933, Lotz had a
conversation with the bank and it agreed to sign the "sub-
rogation agreement." Thereafter, Cummings received from
Lotz the form of "subrogation agreement" asked for by
the defendant, and delivered it to the defendant. On
February 24, 1933, the defendant desired Cummings to
procure from the F. W. Woolworth Company the lease
to show to the bank before it signed the "subrogation
agreement." In pursuance of this desire he gave Cummings
a receipt for the lease which is dated February 24, 1933,
and reads: "Received of F. W. Woolworth Company
lease by and Between F. W. Woolworth Company and
Sumner L. Poorvu of the premises numbered 561 High
Street, Dedham, Massachusetts together with a memoran-
dum to be signed by the Charlestown Five Cents Savings
Bank subrogating the said lease to its mortgage." The
lease, Exhibit 9, signed by the parties, was then delivered
to Poorvu's stenographer who had accompanied Cummings
to the Woolworth office. The evidence leaves it in doubt
whether the assistant treasurer of the bank, whose action,
if any, was ratified and confirmed by the bank's board of
investment on March 7, 1933, ever in fact signed a "subro-
gation agreement," or, if he did, delivered it to the defend-
ant on behalf of the bank. It was in evidence that when
Cummings brought the lease to the defendant for his signa-
ture, on or about February 10, 1933, it did not contain any
clause referring to a "subrogation agreement" and there
were no signatures; that the defendant examined the
lease and noticed that the lessee was the Woolworth Com-
pany of Pennsylvania; that the defendant told Cummings
that the Woolworth Company of Pennsylvania was a
holding company which only signed leases, and it was
solvent so long as the New York Woolworth Company
wanted it to be; that in view of this fact "it would be
necessary that the lease be guaranteed by the Woolworth
Company of New York." Cummings testified that al-
though the defendant signed the lease he returned it with

a letter, the substance of which was that he wanted the lease guaranteed by the New York Woolworth Company, and that Cummings so understood.

Lotz testified "that after preliminary negotiations he forwarded forms of leases to Poorvu for signature which did not contain a guaranty by the New York corporation, although he understood at that time that Poorvu requested it; that on or about the twenty-third of February, 1933, he delivered signed leases to . . . Cummings with instructions to deliver them to . . . Poorvu and to see that the subrogation agreement from the Charlestown Five Cents Savings Bank was affixed"; that the "subrogation agreement" was not drawn at the time the lease was drawn because the bank could not act on that agreement until after the lease was signed by the parties to it; that the signed lease was sent to the defendant so he could deliver it to the bank for its inspection, and it was not intended that the lease in evidence should be kept by the defendant; that he asked the defendant for a delivery of the premises, and the defendant on March 27, 1933, wrote him a letter asking for "a letter of cancellation on any and all papers he [the defendant] had signed with the Woolworth Company," and "that no cancellation was ever sent to . . . Poorvu"; that upon obtaining the "subrogation agreement" from the bank, the transaction was completed and the final procedure would be to have the short form of lease recorded; "that he had the guaranty by the F. W. Woolworth Company of New York to the lease signed by the Woolworth Company of Pennsylvania; that there was no definite time in which this guaranty was to be delivered to . . . Poorvu, and no talk about when it was to be delivered; [and] that it was not delivered to . . . Poorvu."

The executed guaranty of the lease was dated February 21, 1933, and was admitted in evidence at the trial. The defendant testified, and his evidence was not contradicted, that the president of the bank "at no time delivered to him a subrogation agreement to the Woolworth Company which was signed by the Charlestown Five Cents Savings Bank"; that the president of the bank returned to him the draft of

the "subrogation agreement" with the lease, and that this draft was not signed by the bank and was returned to the F. W. Woolworth Company.

Assuming, in favor of the plaintiffs, that the lease was signed by the F. W. Woolworth Company and the defendant, although the landlord's (defendant's) copy was not delivered to him by the Woolworth company or by the plaintiffs, and further assuming, upon not clear evidence, that the agreement of "subrogation" of the bank was delivered by the bank to the company and that the defendant had in some manner, not shown by the evidence, acquired "legal possession" of the store premises, the plaintiffs, nevertheless, were not entitled to receive the stipulated commission, for the reason that they knew, and the F. W. Woolworth Company knew, that the defendant's signature to the lease was conditional upon (1) his ability to get the Irving Trust Company of New York, which was the receiver of the McLellan Stores Company, to vacate the store; (2) the signing of the agreement of "subrogation" by the Charlestown Five Cents Savings Bank; and (3) the guaranty of the F. W. Woolworth Company of New York of the lease signed by the F. W. Woolworth Company of Pennsylvania. The lease and the duplicate original, after signature by the defendant and the F. W. Woolworth Company of Pennsylvania, were always in the custody and possession of the company, save when one was sent through the defendant to the bank for examination. The landlord's lease never was delivered to the defendant by the Woolworth company as an effective lease to bind that company. Lotz testified that he received a letter dated March 27, 1933, wherein the defendant requested a letter of cancellation of any and all papers he had signed with the Woolworth company and that no cancellation was sent. He also testified that he had the F. W. Woolworth Company of New York's guaranty; that there was no definite time in which this guaranty was to be delivered to the defendant. He offered no evidence that the guaranty was ever shown or brought to the attention of the defendant. The failure to deliver the guaranty, if it existed at the time the defend-

ant cancelled his offer to lease the premises, destroyed the plaintiffs' right on all the evidence to a commission, because they had not found a customer who was ready, willing and able to take the premises on the defendant's terms, nor did they prove that the lease was signed and thereby became an effective instrument to bind either the F. W. Woolworth Company or the defendant. Both the lease and the guaranty were in the possession of that company and subject at all times before delivery to the defendant to be legally destroyed. Because of the failure of the company to deliver the guaranty of the New York company the defendant could properly cancel his offer to lease the premises, and on all the evidence he was within his rights when he terminated his brokerage relation with the plaintiffs.

We find nothing in the admissions of the defendant which is sufficient to overcome his defence to the claim of the plaintiffs, and they do not require special discussion.

*Exceptions overruled.*